All rise.  First case on this afternoon's docket is the case of Michael Chatterton v. Beal Ready Mix, and we have Mr. Dan Price for the appellant, and we have Mr. Matt Robinson for the athlete. Mr. Price, you can proceed when you're prepared. Thank you. May it please the Court. My name is Dan Price, and in this matter I represent Michael Chatterton, who is the plaintiff. We bring what I believe is an interesting issue to the Court for resolution today, and that is the question of whether or not a collection bargaining agreement arbitration decision has a conclusive effect as to a public policy retaliatory discharge case under Illinois law, to say it simply. It comes to this Court after a 2619 motion was granted by Judge Gleeson in St. Clair County. Therefore, I believe the standard of review for the Court is de novo. One thing I would like to spend a few minutes talking about before moving past the allegations in the complaint, if that would be okay, is why this situation constitutes a public policy retaliatory discharge claim. Now, that issue was not ventilated well at all in the Court below. In fact, it was almost taken for granted that the complaint stated a cause of action for public policy retaliatory discharge. If you read something with authorities such as Turner, and knowing the fact that with a 2619 motion in de novo review, this Court has the authority to affirm the trial court for whatever reason, even reasons the trial court did not consider, it's important to touch upon that issue. We've addressed it in our briefs, and the defendant has done the same thing. Our position is that if you look at the line of cases starting with Kelsey and the retaliatory discharge in workers' compensation settings, that it is well known and acknowledged by the plaintiff that this is a narrow sort of tort. Paul McKeer, one of the Supreme Court cases, says that the issues that you have must strike to the heart of the citizen's rights and duties. If you look at the allegations, we have a commercial truck driver who has been driving a truck for 11 years without an accident in the employment of the company. On the morning of September 30, 2013, he's assigned a particular truck. Of course, versions of what happened after that vary greatly. Mr. Chatterton's version is he looked at the truck. He saw that the mirrors on the truck, as they then existed, rendered the truck unsafe to drive on the highway. These are those two little mirrors. Pardon me? The big mirrors were there. One of the big mirrors on the passenger side had duct tape on it, and the other two little mirrors were not there at all. His impression of this was that it was unsafe to have on the road because he couldn't maneuver from lane to lane and see what was in back of him. Where do you set the big mirrors? That's got me. I couldn't figure that out. Sorry, sir? Where does he have the big – can he look through the big mirror? Well, if you ever look at the trucks, the state of it is they always have these little – I know that. Yeah. He didn't consider it safe in that condition, and he couldn't adjust the one on the passenger side because of the duct tape. And this truck was an older truck? I can't give you the age of it. It was a dump truck, a 32,000-pound vehicle, and I don't think it's contested in the evidence that the employer knew about the condition of this truck. I mean, the mirrors were never there. I think the mirrors were missing is what the evidence would be. They were off at some point in time. Anyway, sticking with the idea, if it's all right, that Mr. Chatterton felt the truck dangerous on the highway. We have a situation where you have a professional truck driver who has made that determination. And I mean that determination, of course, is a fact question subject to trial if the court lets this matter go forward. But he tells the owner of the truck it can't be driven safely on the highway. Shortly after that, while backing the truck out, he strikes another vehicle. Well, see, that's where I got lost. Did he tell him that the manager or whatever it was told him he had to take that truck and do something with it? This truck was blocking all the other trucks. Well, I thought it was the garage. He had to back it out of the garage so the other trucks could exit. There was never any attention on the placement part to drive it on the highway, but he had to get it out of that area so the other trucks that were ready to leave couldn't leave. And that's where this comes from. Oh, he was never told to take that truck someplace. He was told to back it out. Oh, okay. I don't think that's a contested point in the evidence either. But that's when the accident occurred. It never got on the highway. It was certainly in the yard. So then he backed it out and hit another truck? Yep. And then what happened? Then he was told to shovel rock for the rest of the day, give it a drug test, and the next day it was fired. Now wait a minute. Did they know he hit the truck? Did somebody there with the other truck, was that truck parked? That truck pulled up in back of the yard or in the exit area of the, I call it the yard, it's the shed where these trucks were kept. And, in fact, normally this truck is backed in so this can't happen, but for some reason on this day it was not. And so he was backing out. Okay. And as he was backing out, this truck was parked in an area where he could not see it. So there was no driver in that truck? No, no. A driver actually parked it there and then gone into the shed or the meeting area. So he hits that truck and then he drives away? No. He hits that truck and then he stops and then he's told to shovel rock. He never drives again after the collision. But he never intended to drive other than after backing the truck out because he'd already refused saying it was unsafe to go on the road with it. That's exactly correct. And so at that point he's told his employer that he is not going to drive the truck on the road because it's unsafe. He's had this collision and he's fired the next day for negligence, incompetence, and insubordination or words to that effect. The union grieves that discharge. They say that this did not constitute just cause to terminate Mr. Chatterton under the collective bargaining agreement. Agreed. And while that grievance is pending and unresolved, Mr. Chatterton retained me. And I filed a public policy retaliatory discharge case on his behalf in St. Clair County, that's where Weillman's main office is. That was after he grieved it? It was after the grievance was filed but before the grievance hearing took place. The grievance hearing took place about a month after the case was filed. And the grievance process did not go well for Mr. Chatterton. A couple months after that, the arbitrator decided that he believed in his fact-finding process the position of Weillman and their managers. And he basically did not give Mr. Chatterton much, if any, credibility in that process. And so the question then becomes, does that ruling in that arbitration proceeding operate as a preclusive holding that precludes a public policy retaliatory discharge cause of action? First, if you look at the allegations of the complaint, we say clearly there is a public policy retaliatory discharge cause of action alleged. If you look at the authority that has interpreted this, it starts with the Supreme Court of Illinois in Ryder case. And what the Ryder case says is that the arbitrator of a collective bargaining agreement does not have the authority to address the issue of a public policy retaliatory discharge tort. That tort does not arise under the collective bargaining agreement. It does not require any interpretation of the collective bargaining agreement. It is a creature of Illinois law, recognized and created by Illinois courts, and accordingly cannot be bargained away in the collective bargaining process. The court held in Ryder that the collective bargaining decision did not preempt. A fair reading of the Ryder decision, this is a 1988 decision, and I might add it was decided almost contemporaneously with the United States Supreme Court decision, which is referenced in it, Wendell Norrish, which also holds that there are not, that the collective bargaining agreement has no preemptive force. It references the fact that in the procedural posture of that case, that neither collateral estoppel nor ratio dictata were actually raised. But it goes on to say, at page 433 of the opinion, I think, that because the arbitrator has no authority to decide this, that the decision can have no collateral estoppel effect. Shortly after that decision, there was another decision, Beckman versus Freeman Cole. And that decision squarely held that the collective bargaining agreement did not constitute race judicata as to this issue. So you have two Illinois Supreme Court decisions rejecting collateral estoppel and rejecting race judicata. And if you think about it, that only makes sense because the arbitrator's authority comes from the document, and that document gives him specific authority to decide specific things. And no more and no less. In this case, that is, was there just cause to fire Mr. Chatterton? And you can say that in the context of any accident at the workplace, there's theoretically just cause to fire someone. And as the Supreme Court looks at this and analyzes it in Bryard, it acknowledges that there's some overlap here. And there are times when someone would have just cause, but there would still be a public policy retaliatory discharge case and vice versa. The real importance is that the motive of the employer in making the decision to terminate Chatterton is not measured or tested in the context of a collective bargaining agreement arbitration decision. Let's suppose, and I mean, this could go either way in any given case, because if this went to the plaintiff, the plaintiff would want to say, well, that decides this matter, I want. And when it goes for the defendant, the defendant wants to say, well, you can't go any farther. So it's got, it's a two-way street. You know, it went against Mr. Chatterton this time, but it has the potential to go both ways. So let's say Chatterton prevailed. Does that mean he would automatically be entitled to punitive damages and the other remedies that you would be afforded if you were successful in a public policy retaliatory discharge case? If I was representing a defendant, I would say, of course not. That's a separate matter for a separate tribunal. And I think the same thing is true of what we have here. If Chatterton had won, does that mean that the employer could insulate itself from those claims and just pay back pay and reinstate Mr. Chatterton, which is probably the only remedy you would have under a collective bargaining agreement? That wouldn't be the law. I think that the trial court was probably looking at this thinking, well, Chatterton gets a second bite of the apple. And that isn't really true because he's got a different test to meet in a public policy retaliatory discharge cause of action. There's overlap, and all the cases talk about the fact, yes, there is some overlap, but that is not what determines yes or no. There is a preclusive effect. I think it's important to keep in mind also, when you look at this, that the class of cases that can constitute a public policy retaliatory discharge case are very narrow, and there's not going to be very many of those. Most of these cases, the union arbitration agreement will be the final decision, and it will be binding, and that will be that. Because if there isn't something in the facts that gives rise to one of these kind of cases, you can't relitigate the question of whether there was just cause or repackage it as malicious prosecution or something like that. So that's essentially the position of the plaintiff with regard to this matter. If there's not any questions from the court, I'll stop there. Thank you. Thank you. Thank you, Mr. Price. You'll pass the opportunity for rebuttal. Mr. Robinson. Yes, good afternoon. Good afternoon. I'm Matt Robinson, and I represent Field and Truck Company in this matter. And this case is all about Mr. Chatterton's choices that he made at the arbitration. At the arbitration, he chose to argue that there was no just cause because the employer was retaliating against him for making safety complaints. Mr. Chatterton didn't have to make that argument. All he had to argue was that the employer lacked just cause, and that could be for any number of reasons. It didn't follow progressive discipline. One incident is not sufficient to justify a determination under the contract. He could have argued the employer didn't act timely. There's any number of ways he could have prevailed at arbitration. But he chose to argue that the employer didn't have just cause because they were retaliating against him for complaining about the safety of the truck. The arbitrator actually ruled on that issue. The arbitrator said Mr. Chatterton did not complain about safety. The arbitrator heard Mr. Chatterton's testimony. There was also three others in the room. One of them was a union member, a fellow union member. The other two were supervisors. All three of the other individuals in the room said Mr. Chatterton did not complain about the meters on the truck. He did not. What he complained about was being assigned to drive to Mount Vernon in the tandem truck. He didn't want to do it. It was a 40-minute trip in a tandem truck. He wanted a local trip. And so the arbitrator said Mr. Chatterton, you did not complain about safety. And that finding of fact by the arbitrator binds the parties. The Beckman Illinois Supreme Court decision says that the arbitrator's findings are binding on the parties and are given great weight. And that's why in Beckman the arbitration prevented the plaintiff from stating the cause of action for workers' comp retaliation. Because in Beckman the plaintiff claimed that he was injured on the job, that he pursued workers' comp rights and he was fired as a result. Well, the arbitrator found that he had not pursued workers' comp rights. The employer had no knowledge that he had pursued workers' comp rights because he pursued them after he was terminated. So there's no way the employer could be motivated by his workers' comp, exercising his workers' comp rights. And similarly in this case, it's the issue that was presented to the arbitrator and ruled on by the arbitrator that prevents Mr. Chatterton from stating a claim for public policy discharge. And I think that when you look at the cases, you're going to see a lot of variance because the idea of restitutata and collateral estoppel are equitable. They depend on the facts of the case. And so you can't have one broad rule saying that just because you have a right to arbitration means you can never file a public policy discharge case. Just because you went to arbitration over your discharge doesn't mean you can't file a retaliatory discharge case. The key is what did you present to the arbitrator and what did the arbitrator rule on? Hey, if the arbitrator ignored Mr. Chatterton's claims that he complained about safety and just said, you know, if the employer didn't have just cause because a single incident like this is not sufficient under the contract for termination, then his claim wouldn't be precluded because the arbitrator would not have said, hey, Mr. Chatterton, you did not complain about safety. All you would have said is one incident is not enough under the contract to discharge. That wouldn't have defeated any of Mr. Chatterton's elements. He's got to prove that he acted in a way public policy would encourage, that he was discharged, and that he was discharged because of his exercise of rights, public policy rights. And here the arbitrator made several findings that would defeat the elements of a retaliatory discharge claim. He found that he didn't make any safety complaints. The other thing the arbitrator found was that Mr. Chatterton was actually going to drive that truck to Mount Vernon that day. He begrudgingly said, fine, I'm going to play this game your way. He got in the truck angrily, backed out at a higher rate of speed, and caused a collision. Therefore, Mr. Chatterton was going to engage in the conduct he claims he was not going to engage in. And it's these findings by the arbitrator that the Beckman court say are binding on the parties and that are given great hate by the court. And so while the Beckman court said in that case, rest judicata did not apply, it actually applied to the IRL stopper. It didn't use those terms, but it determined that the arbitrator's finding on a particular distinct issue prevented the plaintiff from stating the cause of action for retaliatory discharge. In Beckman, it was the fact that the employer had no knowledge that the plaintiff had exercised workers' comp rights. In this case, it's that the employee did not complain about the safety of the truck. Now, the next case decided after Beckman was Ryder. Ryder was decided three months after Beckman. Ryder, the issue in Ryder was whether Section 301 of the Labor Management Relations Act preempts a retaliatory discharge cause of action. And it said it doesn't. That's true. We're not arguing that it does. This claim, this retaliatory discharge claim, does not require the court to interpret the terms of the collective bargaining agreement. And as a result, it's not preempted by federal law. That is, and the second issue that Ryder decided was the mere availability of arbitration does not preempt a right to bring a retaliatory discharge clause. We're not saying it's the mere availability of an arbitration. It's the fact that an issue was presented to the arbitrator and ruled on by the arbitrator. Ryder specifically said it was not ruling the issue of restriction codding collateral estoppel were not presented to it. Yet, in some dicta, in dismissing some out-of-jurisdiction case law, said that collateral estoppel wouldn't apply. That dicta should not be followed because that dicta directly conflicts with the Beckman decision three months earlier. Illinois law has consistently applied, the Court of Appeals has consistently applied collateral estoppel to issues found by an arbitrator and applied it to torts. And there's no reason for a public policy tort to be any different. And so the basis of our argument is merely the fact that Chatterton and the union presented this issue to the arbitrator. The arbitrator ruled on that issue and it prevents him from establishing an essential element of his claim. A second issue that was discussed at the trial court was whether Mr. Chatterton has stated a claim for a public policy discharge, whether he's pled a clear mandate of public policy. And this is an independent grounds to uphold the trial court. Mr. Chatterton claims that there's a generalized policy favoring safe operation of motor vehicles on the highway. But what he hasn't done is pled a specific law that was violated. The laws that he cited, the Illinois law requires one box mirror, one big rectangular mirror so the truck driver can see the side of the truck, the traffic over there. This truck had two mirrors, one on each side. The fact that it had one little piece of tape on the bottom doesn't make it dangerous to drive within the narrow meaning of his public policy. There's no public policy of not driving with a little piece of tape on your mirror. The two mirrors, the two little round mirrors that we're missing, there's no requirement for those mirrors. Those are optional mirrors. There's no law that says you have to have them. Under both Illinois and federal law, they are not required. And so Mr. Chatterton has not pled a claim because he has not pointed to a clear mandate of public policy that would be violated by discharging his employment. I thank you for your time today, Your Honors. If there's no further questions, that's all I have. Thank you, Mr. Robinson. Thank you. Mr. Price to have a rebuttal. I'm not sure it's particularly important, but the record is not accurate that no one heard Mr. Chatterton complain. The union member that was there said he didn't recall what was said. The two people that affirmatively said that were both company men. Maybe that's important, and if the court lets this case go forward, maybe it's not. Those are factual matters. Let me pick up, if I could, where Mr. Robinson left off about whether or not a claim is stated here, because I think that is a threshold matter. And let's look at Mr. Chatterton's situation without the worst that you might see in his case, with the difficulties that might exist. Let's say a truck driver goes to his employer in the abstract and says, that truck that you want me to drive is dangerous on the road. I can't do it because I have a high risk of hurting someone. Now, I will respectfully submit to you that the public policy of the state of Illinois should encourage that conduct. In fact, if someone is fired because they say drive the truck or else, they should have a cause of action. And that's not just Price saying it, and that is not a new issue entirely. The Seventh Circuit Court of Appeals has addressed that very question, and they've addressed it in a case called Gaines, I believe. It's cited in my brief. And they rely on some federal legislation called the Safety Traffic Assistance Act or something like that. I've got the exact quote and the exact language in the brief. And that federal legislation says it's illegal to retaliate against someone and fire them because they have a reasonable belief that the vehicle that they're going to operate is dangerous. So I think that that makes it clear when you look at the legislation that there is a cause of action of the type that is pled in Mr. Chatterton's complaint. On the question of preemption, preclusion, reiterata, collateral estoppel, however you want to call it, there is this United States Supreme Court saying that this matter does not preclude in the preemption sense. There is the Seventh Circuit in Jackson v. Bunch who has addressed this issue. We've got that matter in our brief. They rely upon Ryard, and they rely upon Beckman. Beckman says that grace judicata does not apply. And I think a fair reading of Beckman would indicate that it was a little bit misrepresented to this court as to what happened in that case. What they did was, and it's the head notes and the opinion says, the employee's action was not barred on grounds of grace judicata by the arbitrator's prior finding. But then they went ahead and looked at the record, and they looked at the facts, and they decided independently that there weren't enough facts here for a cause of action to be stated. But they did not find that any finding of the arbitrator of any kind precluded anyone from pursuing a cause of action. They just said in that particular case, since the lawsuit was filed, as I would call it, before the worker's compensation rights were asserted, that that couldn't be a cause of action under Illinois law. So it's not exactly the way it was represented to be. In fact, the United States Supreme Court said in circuit and the Illinois Supreme Court all would say that this is not precluded, preempted, barred by collateral estoppel, or the principles of grace judicata. And it can't be, if you think about it, because all the arbitrator can do is decide what he can decide, no more and no less. The arbitration provision, the contract, says he can decide nothing other than that which is given to him. The question that was given to him was merely, was there just cause to fire Mr. Chaddick, not what were the employer's motives in deciding to fire Mr. Chaddick. The court sees fit we would ask you to reverse the decision of the trial court and remand this matter for a trial. Thank you very much for your time. Thank you, Mr. Robinson. We'll take the matter under advisory.